```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF VIRGINIA

                   Alexandria Division

                              )
UNITED STATES OF AMERICA,     )
                              )
                              )
      v.                      )     1:08mj271
                              )     1:08cr508 (JCC)
                              )
JODY R. HANSEN,               )
                              )
    Defendants.               )
                              )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Jody Hansen's (Hansen's) Appeal from the Magistrate Court. For the following reasons, the Court will affirm the Magistrate Court's decision.

### I. Background

On March 28, 2008, at approximately 2:22 p.m., Sergeant Fornshill of the United States Park Police conducted a uniformed patrol of the George Washington Memorial Parkway (Parkway) in a marked police vehicle. He observed a large stake bed truck parked in the Daingerfield Island parking area. This type of truck is prohibited from driving on the Parkway; posted signs clearly notify drivers of this prohibition.

As Sergeant Fornshill drove into the Daingerfield Island parking area, the truck began to drive away. Through the truck's rear window, Sergeant Fornshill saw Hansen in the

1

driver's seat and a passenger in the passenger's seat. Sergeant Fornshill initiated a traffic stop, but the truck repeatedly stopped only for a moment before continuing to drive away. During this time, Sergeant Fornshill could see, through the truck's rear window, that the driver looked down and to his right and then over at his passenger several times. He also saw the passenger lean forward in her seat, as though she were reaching towards the floor.

The truck ultimately stopped on the entrance road to the parking lot. Sergeant Fornshill approached the truck and spoke through the open passenger's window to the driver and passenger, who both appeared to be nervous. The hands of the driver and passenger were shaking and they avoided making eye contact with Sergeant Fornshill. There was a significant age difference between the two. The passenger held a plastic lighter. When asked about their ages and about what they were doing, the driver, Hansen, who was forty-one years old, indicated that he and his passenger, who was nineteen, were friends and that they were just talking.

Sergeant Fornshill requested that Hansen and his passenger exit the truck. They did so, but appeared increasingly nervous, looking around, shifting their gazes, avoiding Sergeant Fornshill's eyes, and fidgeting. Sergeant Fornshill then stated that, for his safety, he was going to look inside the truck for

2

any weapons. Hansen responded that Sergeant Fornshill needed a warrant. Sergeant Fornshill walked to the open passenger door and looked inside the truck. He observed a large purse on the floor of the truck on the front passenger's side. He also saw a small plastic bottle of water on the center console and the plastic lighter on the front passenger seat.

Based upon his training and experience with narcotics cases, and given the presence of the water bottle and plastic lighter, and the nervousness of Hansen and his passenger, Sergeant Fornshill suspected that there were open needles in the vehicle. Sergeant Fornshill asked the passenger if she had any needles on her person; she responded no. He then asked her if she had any needles in the truck; she said yes, and, when asked where they were, responded that they were in her purse.

At this time, Sergeant Fornshill radioed for another officer come to the scene. Upon his colleague's arrival, Sergeant Fornshill conducted a search of the truck and found, in the passenger's purse, a white cloth wrapped around six needles and syringes, a metal spoon that had been used as a cooker, and a small baggie containing a trace amount of white powder. He also found a man's work glove on top of the car's center console. The glove contained a needle and syringe and a cigarette pack. Inside the cigarette pack was a baggie with a trace amount of white powder.

Sergeant Fornshill then asked Hansen if he had any more needles in the truck. Hansen advised the sergeant that there was a needle stuck under the driver's seat. Sergeant Fornshill looked for it there, but found only another cooker spoon. Hansen then volunteered to retrieve the needle and did so. The officers seized all the items and placed Hansen and the passenger under arrest.

On October 15, 2008, following a suppression hearing and bench trial before the Magistrate Judge, Hansen was convicted of all four counts of a Criminal Information: (1) Possession of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 844; (2) Possession of controlled paraphernalia (needles and syringes), in violation of 18 U.S.C. § 13, assimilating 54.1 Va. Code § 3466; (3) Driving a motor vehicle in the Commonwealth of Virginia without a valid driver's license, in violation of 36 C.F.R. § 4.2, adopting 46.2 Va. Code § 300; and (4) Failure to comply with the directions of a traffic control device (a posted sign reading "No Trucks"), in violation of 36 C.F.R. § 4.12.

Hansen was immediately sentenced to pay a $50 fine on each of Counts 3 and 4, but the Magistrate Judge requested a Pre-sentence Report before imposing a sentence on Counts 1 and 2. On November 20, 2008, the magistrate sentenced the defendant to thirty-five days' incarceration for Counts 1 and 2.

Hansen filed a timely notice of appeal on November 28, 2008 and a memorandum in support on January 15, 2009.  The Government submitted a reply on January 16, 2009.  The Court held a hearing on this appeal on January 16, 2008.[1]  This appeal is currently before the Court.

## II.  Standard of Review

A defendant has the right to appeal a magistrate's judgment of conviction or sentence to a district judge.  18 U.S.C. § 3402; Fed. R. Crim. P. 58(g)(2)(B).  The defendant, however, "is not entitled to a de novo trial by a district judge."  Fed. R. Crim. P. 58(g)(2)(D).  Rather, "[t]he scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge."  *Id.*  Thus, the district court generally must review the magistrate court's "findings of fact for clear error and its legal conclusions de novo."  *United States v. Uzenski*, 434 F.3d 690, 704 (4th Cir. 2006) (citing *United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001)).  Moreover, the evidence must be construed in the light most favorable to the prevailing party.  *Id.* (citing *United States v. Seidman*, 156 F.3d 542, 547 (4th Cir. 1998)).

---

[1] At this hearing, Hansen was represented by counsel but he did not personally appear because he had been previously deported.

**III. Analysis**

In this appeal, Hansen argues that the magistrate judge erred in (1) failing to suppress Hansen's statements to Sergeant Fornshill, and (2) finding that the evidence presented at trial was sufficient to support Hansen's conviction for possession of cocaine and controlled paraphernalia.[2]  The Government requests that the Court deny Hansen's appeal on both grounds.

    A.   Motion to Suppress

Hansen argues that "his responsive statements to [Sergeant] Fornshill's questions should have been suppressed" because Sergeant Fornshill conducted a custodial interrogation without giving Hansen the necessary *Miranda* warnings.  Def.'s Mem. in Supp. at 4.  Hansen does not challenge the legality of the original traffic stop, but argues that at some unspecified point during the stop, Sergeant Fornshill placed him "in custody" for the purposes of *Miranda*.  Because Sergeant Fornshill interrogated Hanson after that time, without first Mirandizing him, Hanson argues that his subsequent statements are inadmissible.

"A person subjected to custodial interrogation is entitled to the procedural safeguards prescribed by *Miranda*." *United States v. Leshuk*, 65 F.3d 1105, 1108 (4th Cir. 1995)

---

[2] Hansen does not appeal his convictions for the traffic violations (Counts 3 and 4).

(citations omitted). Any statements a suspect makes during custodial interrogation are inadmissible unless the defendant received *Miranda* warnings. *Id.*; *see also Berkemer v. McCarty*, 468 U.S. 420, 434 (1984). A person is "in custody" for *Miranda* purposes when he is formally arrested or questioned under circumstances in which his freedom of action is curtailed "of the degree associated with a formal arrest." *United States v. Leshuk*, 65 F.3d 1105, 1108 (4th Cir. 1995) (quoting *Cal. v. Beheler*, 463 U.S. 1121, 1125 (1983)). To determine whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, *Stansbury v. Cal.*, 511 U.S. 318, 322 (1994), and determine "how a reasonable man in the suspect's position would have understood his situation," *id.* (quoting *Berkemer*, 468 U.S. at 442); *see also Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004).

Before trial, Hansen moved to suppress all of the evidence obtained at the traffic stop. Summ. of Proceedings at 4. He put forth three arguments: that Sergeant Fornshill (1) interrogated him while he was in custody without first Mirandizing him, (2) exceeded the scope of a traffic stop, and (3) conducted a search of the truck and the passenger's purse not justified by concerns about officer safety. *Id.*

After hearing testimony and arguments, the Magistrate Court denied Hansen's motion to suppress. *Id.* at 6. The

7

magistrate did not specifically address Hansen's *Miranda* argument or make an explicit finding regarding whether Hansen was "in custody" during the stop.[3]  The magistrate's ultimate denial of Hansen's motion, however, necessarily means that the magistrate determined that Hansen was not "in custody" when he made the incriminating statements.

In conducting its review of the magistrate's decision, the Court reviews factual findings regarding whether a person was "in custody" "so as to require the giving of *Miranda* warnings" for "clear error."  *United States v. Leshuk*, 65 F.3d 1105, 1109 (4th Cir. 1995).  The Court reviews the trial court's legal conclusions de novo.  *United States v. Uzenski*, 434 F.3d 690, 704 (4th Cir. 2006) (citation omitted).  It also construes all of the evidence in the light most favorable to the prevailing party below.  *See United States v. Uzenski*, 434 F.3d 690, 704 (4th Cir. 2006).

On this appeal, Hansen raises only one of the three arguments he made prior to his trial: that "his responsive statements to [Sergeant] Fornshill's questions should have been suppressed" because Sergeant Fornshill conducted a custodial interrogation without giving Hansen the necessary *Miranda*

---

[3] The Magistrate Judge held that Sergeant Fornshill's restriction of Hansen's liberty was reasonable under the Fourth Amendment to the United States Constitution and *Terry v. Ohio*, 392 U.S. 1 (1968).  Summ. of Proceedings at 4 (citing *United States v. Leshuk*, 65 F.3d 1105 (4th Cir. 1995)).

warnings. Def.'s Mem. in Supp. at 4. He correctly notes that traffic stops generally do not constitute the type of "custody" that triggers *Miranda* rights, *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984), but argues that he was "in custody" during this stop because a reasonable person in his situation "would not have felt free to leave" and "would have felt completely at the mercy of the National Park Service Police." Def.'s Mem. in Supp. at 5 (relying on *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).

In *Thompson v. Keohane*, 516 U.S. 99, 112 (1995), the Supreme Court stated that "[t]wo discrete inquiries are essential to the [custody] determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." Next, the Court explains that "[o]nce the [factual] scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* (quoting *Beheler*, 463 U.S. at 1125; *Or. v. Mathiason*, 429 U.S. 492, 495 (1977)).

The Supreme Court addressed this "ultimate inquiry" in the context of a traffic stop in *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (citing *Beheler*, 463 U.S. at 1125). The specific question before the Court in that case was "whether the roadside

9

questioning of a motorist detained pursuant to a routine traffic stop should be considered 'custodial interrogation.'" It found that traffic stops did not put suspects "in custody" for the purposes of *Miranda* for two reasons: first, because the "detention of a motorist pursuant to a traffic stop is presumptively temporary and brief," *id.* at 437, and second, because "the atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself and in the subsequent cases in which [the Court] ha[s] applied *Miranda*," *id.* at 438-39 (citations omitted).

The Court finds, in reviewing all of the circumstances, that Hansen was not "in custody" for *Miranda* purposes. Hansen does not argue that the initial traffic stop, by itself, rendered him "in custody." Further, he has failed to demonstrate that, at any time between the initial stop and the arrest, he was subjected to restraints comparable to those associated with a formal arrest. Based on the facts discussed below, the Court sees no basis on which to distinguish this case from the Supreme Court's clear decision in *Berkemer.*

Sergeant Fornshill testified that the time between the stop and Hansen's arrest lasted no more than fifteen minutes. *See Berkemer*, 468 U.S. at 441 (nothing that the traffic stop lasted only a "short period of time"). Further, as in *Berkemer*, "[a]t no point during that interval was [Hansen] informed that

10

questioning of a motorist detained pursuant to a routine traffic stop should be considered 'custodial interrogation.'" It found that traffic stops did not put suspects "in custody" for the purposes of *Miranda* for two reasons: first, because the "detention of a motorist pursuant to a traffic stop is presumptively temporary and brief," *id.* at 437, and second, because "the atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself and in the subsequent cases in which [the Court] ha[s] applied *Miranda*," *id.* at 438-39 (citations omitted).

The Court finds, in reviewing all of the circumstances, that Hansen was not "in custody" for *Miranda* purposes. Hansen does not argue that the initial traffic stop, by itself, rendered him "in custody." Further, he has failed to demonstrate that, at any time between the initial stop and the arrest, he was subjected to restraints comparable to those associated with a formal arrest. Based on the facts discussed below, the Court sees no basis on which to distinguish this case from the Supreme Court's clear decision in *Berkemer.*

Sergeant Fornshill testified that the time between the stop and Hansen's arrest lasted no more than fifteen minutes. *See Berkemer*, 468 U.S. at 441 (nothing that the traffic stop lasted only a "short period of time"). Further, as in *Berkemer*, "[a]t no point during that interval was [Hansen] informed that

his detention would not be temporary." *Id.* at 441-42. In addition, only "[a] single police officer asked [Hansen] a modest number of questions" and requested him to stand outside the vehicle "at a location visible to passing motorists." *Id.* at 442. Hanson was similarly not placed in the patrol car, handcuffed, physically restrained, searched, or subjected to persistent questioning. *See id.* at 442 nn.34 & 36. The Court finds that "[t]reatment of this sort cannot fairly be characterized as the functional equivalent of formal arrest." *Id.* at 442.

Hansen's argument that his *Miranda* rights were triggered because he did not feel free to leave the scene is meritless. While "few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so," a traffic stop of this kind does not amount to a custodial situation. *Berkemer*, 468 U.S. at 436, 439. Hansen's final assertion, that the stop was custodial because Sergeant Fornshill never told him that he was free to leave, is similarly infirm. Such a representation is not necessary to avoid triggering the subject's *Miranda* rights. *See United States v. Sullivan*, 138 F.3d 126, 130-31 (4th Cir. 1998); *United States v. Leshuk*, 65 F.3d 1105, 1110 (4th Cir. 1995); *United States v. Wilson*, 895 F.2d 168, 172 (4th Cir.

1990).  For these reasons, Hansen's suppression motion was properly denied.

        B.    <u>Evidence of Constructive Possession</u>

Hansen argues that the evidence put forth by the Government at trial was not sufficient to establish that he constructively possessed the cocaine and controlled paraphernalia.  Thus, he says, the Government did not present sufficient evidence to convict him of Counts 1 and 2, the possession charges.

"To establish constructive possession, the government must produce evidence showing [that the defendant had] ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed."  *United States v. Blue*, 957 F. 2d 106, 107 (4th Cir. 1992) (internal quotation and citations omitted).  Possession may be established with direct or circumstantial evidence, *United States v. Shorter*, 328 F.3d 167, 172 (4th Cir. 2003), and need not be exclusive, but may be shared by others, *United States v. Laughman*, 618 F. 2d 1067, 1077 (4th Cir. 1980).

The Government must also show the defendant's knowledge of the possession. *See United States v. Schocket*, 753 F.2d 336, 340 (4th Cir. 1985) ("A person has constructive possession of a narcotic if he knows of its presence and has the power to exercise dominion and control over it."); *United States v. Bell*, 954 F. 2d 232, 235 (4th Cir. 1992) ("Of course, knowledge of the

presence of the controlled substance is essential to an assertion of constructive possession."), *overruled on other grounds by United States v. Burgos*, 94 F.3d 849 (4th Cir. 1996). Knowledge of the presence of a controlled substance "may be shown by circumstantial evidence." *United States v. Grubbs*, 773 F. 2d 599, 601 (4th Cir. 1985) (citing *United States v. Glasser*, 315 U.S. at 80).

Following argument from both sides regarding the sufficiency of the evidence to establish Hansen's constructive possession of cocaine and drug paraphernalia, the Magistrate Judge found that "the United States had established the elements of the two charges beyond a reasonable doubt." Summ. of Proceedings at 7. In making this decision, the magistrate relied on *United States v. Blue*, 957 F.2d 106, and *United States v. Bell*, 954 F.2d 232, and further found that "[Hansen] clearly was aware of drug paraphernalia" based on "the admission that he knew of the needles in the car." Tr. at 60. It also held that "[t]he cigarette package was certainly in a vehicle in which he was driving" and "[Hanson] had dominion and control over the vehicle" and thus "over that carton," which contained "the cocaine that he has now been charged with." *Id.*

On appeal by the defendant, the evidence and all reasonable inferences therefrom must be viewed "in the light most favorable to the government." *United States v. Laughman*, 618 F.

13

2d 1067, 1076 (4th Cir. 1980) (citing *United States v. Glasser*, 315 U.S. 60, 80 (1942)).  The reviewing court must decide "only [whether] the evidence would permit the triers of fact to find the defendant guilty beyond a reasonable doubt."  *United States v. Sherman*, 421 F.2d 198, 199 (4th Cir.), *cert. denied*, 398 U.S. 914 (1970) (citing *United States v. Ragland*, 306 F.2d 732 (4th Cir. 1962), *cert. denied*, 371 U.S. 949 (1963)).  When the evidence, construed in favor of the government, is such that the jury might find the defendant guilty beyond a reasonable doubt, it is sufficient to sustain a finding of guilt.  *United States v. Sherman*, 421 F.2d 198, 199-200 (4th Cir.), *cert. denied*, 398 U.S. 914 (1970) (citations omitted); *see also United States v. Scott*, 730 F.2d 143, 146 (4th Cir. 1984).

In the instant case, the Government presented evidence showing that Hansen was driving his own vehicle, that he stopped and repeatedly pulled away when Sergeant Fornshill initiated a traffic stop, and that he exchanged looks with his passenger, who made movements towards the floor of the vehicle and looked back at Sergeant Fornshill in the rearview mirror.  The Government also presented evidence showing that both Hansen and his passenger were unusually nervous during the traffic stop and that the defendant professed knowledge of, and then volunteered to and did retrieve, controlled paraphernalia from underneath his seat in the vehicle.

Sergeant Fornshill also testified that he found, on top of the center console of the vehicle, a man's work glove containing a needle and syringe and a cigarette pack containing a baggie with white residue.[4]  He further testified that the center console was immediately to the right of the driver's seat and within the dominion and control of the driver.

The Court has evaluated the totality of the evidence presented by the Government.  Construing that evidence in the light most favorable to the Government, the Magistrate Judge could find, beyond a reasonable doubt, that Hansen constructively possessed the cocaine and drug paraphernalia that were in the vehicle he was driving.  There is sufficient evidence to support a finding that Hansen exercised dominion and control over the contraband and that he had knowledge of that contraband and its location within the vehicle based on the facts set forth above.

The Court also finds that, even excluding the statements Hansen made before he was formally arrested and Mirandized, the Magistrate Court's decision was based on sufficient evidence.  Hansen's knowledge and control over the contraband is sufficiently established by all the other evidence that the magistrate could find, beyond a reasonable doubt, that Hansen constructively possessed the cocaine and drug paraphernalia that were in the vehicle he was driving.

---

[4] Hansen stipulated that the white powder substance was cocaine.  Summ. of Proceedings at 3.

## IV.  Conclusion

For these reasons, the Court will affirm the Magistrate Court.

An appropriate Order will issue.

```
February 6, 2009                 _____/s/_____
Alexandria, Virginia                     James C. Cacheris
                                 UNITED STATES DISTRICT COURT JUDGE
```